# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACILYN MARIE GARCIA, | Case No. 1:21-cv-00068-SAB |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 20, 22) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.

## INTRODUCTION

Tracilyn Marie Garcia ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]  Plaintiff submits that the ALJ erred because the mental residual functional capacity determination is not supported by substantial evidence, and because the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's symptom testimony.  For the reasons set forth below, Plaintiff's Social Security appeal shall be granted.

/ / /

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 7, 10, 11.)

**II.**

**BACKGROUND**

### A.     Procedural History

On June 12, 2019, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income, alleging a period of disability beginning on March 1, 2018.  (AR 15, 110, 229-244.)  Plaintiff's application was initially denied on August 27, 2019, and denied upon reconsideration on November 24, 2019.  (AR 110-111, 140-141.)  On November 19, 2019, Plaintiff requested a hearing, and on August 8, 2020, testified at a hearing before Administrative Law Judge Michael S. Condon (the "ALJ").  (AR 30-71, 155-156.)  On September 15, 2020, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 12-29.)  On November 23, 2020, the Appeals Council denied Plaintiff's request for review.  (AR 1-6.)

On January 15, 2021, Plaintiff filed this action for judicial review.  (ECF No. 1.)  On June 11, 2021, Defendant filed the administrative record ("AR") in this action.  (ECF No. 12-1.)  On November 12, 2021, Plaintiff filed an opening brief.  (Pl.'s Opening Br. ("Br."), ECF No. 20.)  On December 13, 2021, Defendant filed an opposition brief.  (Def.'s Opp'n ("Opp'n"), ECF No. 22.)  Plaintiff did not file any reply brief.

### B.     The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, May 29, 2020:

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024.

- Plaintiff has not engaged in substantial gainful activity since March 1, 2018, the alleged onset date.

- Plaintiff has the following severe impairments: bipolar II disorder, post-traumatic stress disorder, general anxiety disorder, borderline personality disorder, and obesity.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1.

- Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can never climb ladders, ropes, or scaffolds, have no more than occasional exposure to greater than moderate noise levels and vibration, no exposure to hazards, including unprotected heights and dangerous moving machinery and no operation of motor vehicles. The claimant has no limit on climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling. The claimant can have no more than occasional exposure to fumes, odors, dusts, gases and areas of poor ventilation. The claimant can understand, remember and apply information to perform simple tasks, is able to focus on and complete simple tasks, can make simple decisions and adapt to routine changes in the workplace setting. The claimant can have no more than occasional contact with the general public, coworkers and supervisors.

- Plaintiff is unable to perform any past relevant work.

- Plaintiff was born on August 21, 1994 and was 23 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

- Plaintiff has at least a high school education.

- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Plaintiff is "not disabled," whether or not the Plaintiff has transferable job skills.

- Considering the Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.

- Plaintiff has not been under a disability, as defined in the Social Security Act, from March 1, 2018, through the date of this decision [September 18, 2020].

(AR 17-24.)

/ / /

/ / /

# III.

# LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits. Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

4

Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff raises two primary challenge in this appeal: (1) that the ALJ's determination regarding Plaintiff's mental residual functional capacity ("MRFC") was not supported by substantial evidence; and (2) that the ALJ erred by failing to provide clear and convincing reasons for discounting Plaintiff's symptom testimony.  The Court finds the ALJ erred by failing to provide clear and convincing reasons for discounting the symptom testimony, and finds this matter appropriate for remand.  The Court finds it unnecessary to addresses Plaintiff's challenge to the MRFC.

### A.    Whether the ALJ Erred in Weighing Plaintiff's Testimony

Plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting her testimony.  (Br. 12-17.)

1.      <u>General Legal Standards</u>[3]

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment."  <u>Orn v. Astrue</u>, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted).  Determining whether a claimant's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis.  <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms.  <u>Smolen</u>, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of her symptoms by offering "clear and convincing reasons" for the adverse credibility finding.  <u>Carmickle v. Commissioner of Social Security</u>, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.  <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004).

Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors.  <u>Lingenfelter</u>, 504 F.3d at 1040; <u>Thomas</u>, 278 F.3d at 958.  In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent

---

[3]  Although Defendant maintains its disagreement with the standard, Defendant acknowledges the clear and convincing standard is the applicable standard for weighing credibility in the Ninth Circuit.  (Opp'n 6 n.4.)

1   statements concerning the symptoms, and other testimony by the claimant that appears less than

2   candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a

3   prescribed course of treatment." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)

4   (quoting Smolen, 80 F.3d at 1284). The district court is constrained to review those reasons that

5   the ALJ provided in finding the claimant's testimony not credible. Brown-Hunter v. Colvin, 806

6   F.3d 487, 492 (9th Cir. 2015).

7          2.     The ALJ's Findings and Conclusions

8          The ALJ summarized Plaintiff's testimony in one sentence, and made a generally

9   standard statement regarding the discounting of the symptom testimony as follows:

> The claimant alleges that she is disabled and unable to work due to
> her medical and psychological conditions. Specifically, she
> testified to and reported the following: she has difficulty with
> memory, concentration, and getting along with others. The
> claimant alleges that due to her psychological conditions, she is
> precluded from performing work . . . these symptoms are not
> entirely consistent with the medical evidence and other evidence in
> the record for the reasons explained in this decision.

15  (AR 20-21.)

16         The ALJ made the following findings as to the RFC and credibility determination overall,

17  and then reemphasized certain reasons, in addition to daily activities, for discounting the

18  symptom testimony:

> The claimant was also diagnosed with bipolar II disorder, post-
> traumatic stress disorder, general anxiety disorder, and borderline
> personality disorder. (12F; 11F; 8F; 7F; 6F; 5F). The claimant
> endorsed feelings of depression and anxiety, for which she was on
> medication and seeking counseling services. However, she was
> treated conservatively, with routine medication and counseling
> sessions throughout the period at issue. The record shows minimal,
> infrequent changes to her medication regimen. Mental status and
> psychiatric exams throughout the period at issue showed minimal
> to normal findings, aside from depressed and anxious mood.
> (12F/3, 21, 53; 11F/26, 39, 48; 8F/26; 7F; 6F/21, 46, 56; 5F/6).
> Examiners noted that she was cooperative, had appropriate
> grooming, and did not note significant abnormalities to her thought
> processes, content, or memory. (12F/3, 21, 53; 11F/26, 39, 48;
> 8F/26; 7F; 6F/21, 46, 56; 5F/6). She did not exhibit suicidal or
> homicidal ideations, hallucinations, psychomotor retardation, or
> delusions. (12F/3, 21, 53; 11F/26, 39, 48; 8F/26; 7F; 6F/21, 46, 56;
> 5F/6). The claimant was seen in the emergency room in 2018 and
> 2020 for symptoms unrelated to her mental health disorders. (10F;

4F). Otherwise, the record fails to show frequent emergency room visits or extended inpatient hospitalization. Given the medical record and claimant's testimony, the claimant's impairments can be reasonably accommodated with a residual functional capacity of a full range of work, with mental restrictions.

. . .

The undersigned has considered several other factors in assessing the consistency of the claimant's subjective complaints with the overall evidence of record pursuant to Social Security Ruling (SSR) 16-3p. The claimant's statements regarding the duration, frequency and intensity of her symptoms are generally not supported by the medical evidence. For example, mental status exam findings were minimal throughout the period at issue. (12F/3, 21, 53; 11F/26, 39, 48; 8F/26; 7F; 6F/21, 46, 56; 5F/6). Additionally, she was treated conservatively, with routine medication and follow-up appointments. Furthermore, the claimant's admitted activities of daily living suggest a greater degree of functional capacity than claimed. (3E; 4E). For these reasons, the undersigned finds that the claimant's allegations are generally inconsistent with the record. (SSR 16-3p).

(AR 21.)

As relevant to Defendant's arguments concerning the ALJ's use of daily activities in the credibility determination, the ALJ made certain findings in the step three portion of the opinion, when the ALJ determined the Plaintiff did not meet or equal any listing. Specifically, at step three, the ALJ made the following observations:

The claimant alleged that she has difficulty remembering generally, following instructions, and completing tasks. However, the claimant also stated that she could perform simple maintenance, go to doctor's appointments, and take medications . . . the record shows that the claimant was able to provide information about her health, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, and respond to questions from medical providers . . .

. . . Here, the claimant alleged that she has difficulty engaging in social activities and getting along with others. However, according to her statements, the claimant is also able to spend time with friends and family . . . Finally, the medical evidence shows that the claimant was described as pleasant and cooperative and appeared comfortable during appointments . . .

. . . Finally, the claimant has mild limitations in her ability to adapt or manage herself. The claimant asserted that she has difficulties managing her mood. That said, the claimant also stated that she is able to handle self-care and personal hygiene . . . Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene and no problems with temper control . . .

. . . The claimant contended that she has limitations in concentrating generally, focusing generally, following instructions, and completing tasks. On the other hand, the claimant said that she is also able to handle her own medical care . . . Additionally, the record fails to show any mention of distractibility.

(AR 19.)

### 3.   Plaintiff's Primary Challenges

Plaintiff first emphasizes the ALJ only briefly and generally summarized her hearing testimony in one paragraph, before concluding the symptoms are not consistent with the objective medical evidence and other evidence. (See AR 20-21 ("The claimant alleges that she is disabled and unable to work due to her medical and psychological conditions. Specifically, she testified to and reported the following: she has difficulty with memory, concentration, and getting along with others").) Plaintiff argues that the ALJ's description of her mental status examinations as minimal is a mischaracterization, as Plaintiff's examination documents findings of "labile," "anxious," "depressed mood," "restricted" and "tense" affect, and "poor judgment." (AR 651-52, 681, 770-71, 779, 786.) Plaintiff further argues the ALJ failed to specifically discuss Plaintiff's testimony regarding limitations interacting with others and acting appropriately in public, and how these findings would permit the performance of sustained work activity. (Br. 14-15.)

Plaintiff submits the ALJ erred failed to specifically identify what testimony was credible or not credible, and what evidence undermined which testimony, emphasizing testimony that she has problems driving where she loses focus and becomes overwhelmed (AR 35); that she drives only once or twice a week; that she will do Walmart pickup so she does not have to go inside the store because "people could be overwhelming," and she "[s]ometimes [] tend[s] to fight with people…or get[s] overwhelmed by the noise or just how many people are crowded in a setting" (AR 36); that she had to start cutting back hours at the Mentor Management jobs (AR 43 ("I started not being able to handle doing that. I was calling in a lot")); her testimony regarding another job (AR 44-45 ("it was just overwhelming. I was shaking, I couldn't concentrate. I had to leave early. I was calling in, not go in because I couldn't handle it")); that her troubles

1  involved both patients and co-workers; that she testified she was unable to work due to anger

2  (AR 45 ("tend[s] to get angry, and when I get angry, I get shaky and then I can't concentrate on

3  anything"); that in 2018 she continued experience anger issues at work (AR 46 ("just started to

4  get really angry at certain things, like almost when things are out [of] my control, anything, it's

5  like I couldn't handle it.  It started getting worse and seeked [sic] out therapy and just started

6  seeking out help in the end of 2017, 2018, because I just couldn't cope.  I couldn't chart, like

7  write down anything or remember half of my shift to shut down for state")); that she had

8  "conflicts" with co-workers and a superior which resulted in her leaving her job (AR 59); and

9  that although she was enrolled in the Disabled Students Program, receiving multiple

10  accommodations including extended time to complete tasks, she was unable to continue with

11  classes due to being "overwhelmed," resulting in her grades dropping (AR 50).  In light of this

12  testimony, Plaintiff highlights that the VE testimony that if a person was absent at least twice a

13  month, there would be no work in the national economy.  (AR 68-69.)

14      Next, Plaintiff argues the ALJ failed to specifically identify anywhere in the decision

15  what activities of daily living "suggest a greater degree of functional capacity than claimed"

16  when the ALJ only supported the conclusion with a citation generally to 16 pages in "Exhibits

17  3E and 4E" (AR 21, 273-288); and failed to discuss any specific aspect of Plaintiff's testimony.

18  Plaintiff argues the ALJ failed to discuss that she left her last job after multiple conflict with

19  supervisors, co-workers and clients and reduced attendance, all due to uncontrolled psychiatric

20  symptoms from PTSD.[4]  Finally, Plaintiff argues the reference to conservative treatment is not

21  clear and convincing to reject severe psychiatric symptomology resulting from PTSD, as she was

22  treated with numerous and varying prescription medications.

23      4.   The Court finds the ALJ Failed to Provide Clear and Convincing Reasons

24      Defendant argues the ALJ properly based the credibility determination on three grounds,

25

26  [4]  While this incident is not determinative to this appeal, the Court notes that the Plaintiff, in her challenge to the
MRFC, similarly describes the incident as a April 3, 2020 record that documents Plaintiff "was forced to quit her job
27  due to her severe mental impairments." (Br. 10, AR 770.)  The record actually indicates that she "had to quit her job
due to stress.  Client was care giver for a disabled client who was physically abusive." (AR 770.)  The Court finds
28  counsel's framing of this as being forced to quit due to her severe mental impairments to somewhat gloss over the
fact she was being physically assaulted by the disabled clients at her work.

1    finding the testimony inconsistent with: (1) the objective medical evidence; (2) with the

2    conservative course of treatment; and (3) with Plaintiff's activities.  (Opp'n 8-12.)

3        The ALJ cannot discredit Plaintiff's pain testimony solely because it is found not to be

4    supported by the objective medical evidence.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir.

5    2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully

6    corroborated by objective medical evidence, the medical evidence is still a relevant factor in

7    determining the severity of the claimant's pain and its disabling effects.") (citing 20 C.F.R. §

8    404.1529(c)(2)); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991); Vertigan v. Halter, 260

9    F.3d 1044, 1049 (9th Cir. 2001) ("The fact that a claimant's testimony is not fully corroborated

10   by the objective medical findings, in and of itself, is not a clear and convincing reason for

11   rejecting it."); Burch, 400 F.3d at 680-81 ("Although lack of medical evidence cannot form the

12   sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility

13   analysis.").

14       Therefore, because the first proffered reason of being inconsistent with the objective

15   medical evidence cannot stand alone, the Court will first turn to determine whether either of the

16   other two reasons provided by the ALJ for the credibility analysis are clear and convincing

17   reasons supported by substantial evidence in the record.

18       **a.    Conservative Treatment**

19       Conservative treatment can be a clear and convincing reason to reject a claimant's

20   symptom testimony.  See Parra v. Astrue, 481 F.3d 742, 750–51 (9th Cir. 2007) ("The ALJ also

21   noted that Parra's physical ailments were treated with an over-the-counter pain medication.  We

22   have previously indicated that evidence of 'conservative treatment' is sufficient to discount a

23   claimant's testimony regarding severity of an impairment.").

24       Plaintiff argues a finding of conservative treatment is not a clear and convincing reason

25   for rejecting her psychiatric symptomology resulting from PTSD, as she was treated with

26   numerous and varying prescription medication including SSRIs such as Zoloft and Trazadone;

27   the anti-psychotic, Abilify; as well as blood pressure medications, Clonidine and Prazosin.  (AR

28   48 650, 758, 771, 780.)  The Court does not find consideration of the blood pressure medications

1    determinative here as Plaintiff's disability claim is largely or wholly based on her mental
2    ailments.

3         The ALJ acknowledged that Plaintiff was diagnosed "with bipolar II disorder, post-
4    traumatic stress disorder, general anxiety disorder, and borderline personality disorder."  (AR
5    21.)  The ALJ acknowledged that Plaintiff complained of depression and anxiety, and stated "she
6    was on medication and seeking counseling services" for this, but "she was treated
7    conservatively, with routine medication and counseling sessions throughout the period at issue
8    [and] [t]he record shows minimal, infrequent changes to her medication regimen."  (AR 21.)
9    The ALJ also noted she was seen in the emergency room in 2018 and 2020 for symptoms
10   unrelated to her mental health disorders, and found the record failed "to show frequent
11   emergency room visits or extended inpatient hospitalization."  (AR 21.)

12        Other than generally referring to "medication," the ALJ does not specifically summarize
13   or mention Plaintiff's course of psychological medications, the type, the dates of use, or any
14   other specific information concerning her longitudinal medical history in that regard.  Other than
15   stating the medications were routine and conservative, and infrequently changed, the ALJ does
16   not specifically mention any information about the treatment by medication that would support
17   the finding of the treatment being routine and conservative.   Given the various issues
18   surrounding mental health treatment and the Plaintiff's record of mental health treatment and
19   medications, the Court does not find the ALJ's findings and conclusions in this instance to be a
20   clear and convincing reason supported by substantial evidence in the record.  See Darren W. v.
21   Saul, No. 6:19-CV-1008-SI, 2021 WL 1181177, at *10 (D. Or. Mar. 29, 2021) ("[T]he Court
22   generally hesitates to rely on conservative treatment decisions to undermine the credibility of
23   someone who, like Plaintiff, has a mental impairment."); Baker v. Astrue, No. ED CV 09-01078
24   RZ, 2010 WL 682263, at *1 (C.D. Cal. Feb. 24, 2010) ("The Commissioner argues . . . Plaintiff
25   had a non-severe impairment because he only received conservative treatment, consisting of
26   medication management, and was not hospitalized for any episodes of decompensation . . . Much
27   treatment of mental disorders involves medication management, and it is unpersuasive to call this
28   'conservative treatment,' and state that therefore a claimant does not have a severe impairment.

Where mental activity is involved, administering medications that can alter behavior shows anything but conservative treatment."); Gary I. v. Kijakazi, No. 2:20-CV-07882-GJS, 2022 WL 220918, at *5 (C.D. Cal. Jan. 24, 2022) ("Plaintiff has multiple severe mental impairments for which he takes several prescription medications, including Latuda, Wellbutrin (bupropion), and Vistaril (hydroxyzine).[] At one point, Plaintiff took Zoloft, but he reported sexual side effects and it was discontinued . . . Courts have established that medication treatment regimens with such medications are not conservative . . . Nor must a claimant undergo psychiatric hospitalization to be considered disabled."); Wilson v. Berryhill, No. CV 17-06967-AFM, 2018 WL 6321629, at *4 (C.D. Cal. July 9, 2018) ("Plaintiff contends that his mental health treatment was not conservative because he has been prescribed the following medication: Prozac, Trazodone, Wellbutrin, Seroquel, Remeron, Zoloft, Ativan, Geodon, Paxil, Buspirone . . . As Plaintiff correctly points out, courts have recognized that treatment involving several of these medications is not 'conservative.' "); Carden v. Colvin, No. CV 13-3856-E, 2014 WL 839111, at *2–3 (C.D. Cal. Mar. 4, 2014) ("the ALJ's description of Plaintiff's mental health treatment as "conservative at best" mischaracterizes the treatment . . . Plaintiff has been under the continuous care of mental health professionals, including psychiatrists, clinical pharmacists, and psychiatric social workers . . . taken the form of frequent therapy sessions and the prescribing of psychotropic medications . . . . include[ing] Zyprexa, Depakote, Geodon, Remeron, Lithium, Zoloft, Risperdal, Wellbutrin, Seroquel, Trazodone and Buspirone . . . Courts specifically have recognized that the prescription of several of these medications connotes mental health treatment which is not 'conservative,' within the meaning of social security jurisprudence.").[5]

---

[5] See also Corrina D. v. Kijakazi, No. CV 20-07664-JEM, 2021 WL 8362905, at *5 (C.D. Cal. Dec. 15, 2021) ("Plaintiff has multiple severe mental impairments for which she takes multiple prescription medications, including Ativan, Wellbutrin, Prozac, Abilify, Trazadone, and Vistaril. (AR 27.) She also was prescribed Seroquel for a period in early 2017. (AR 367-368.) Courts have established that medication treatment regimens with such medications are not conservative . . . Nor must a claimant undergo psychiatric hospitalization to be considered disabled."); A.B. v. Saul, No. 8:18-CV-00997-SHK, 2019 WL 6139163, at *8–9 (C.D. Cal. July 23, 2019) ("Plaintiff was prescribed antipsychotics and sedatives to treat a mental condition identified as some combination of bipolar disorder, paranoid schizophrenia, attention deficit hyperactive disorder, and generalized anxiety disorder . . . prescribing Zyprexa, Celexa, and Xanax, noting previous treatment with Seroquel, Ability, and Lithium, and noting that "without medications [Plaintiff] becomes psychotic"); 437 (alprazolam); 465 (Zyprexa, Celexa, Xanax); 513 (Buspirone).

Defendant counters that Plaintiff's claims that her mind altering medications for severe psychiatric symptomology were not conservative treatment, is inconsistent with the evidence and her hearing testimony that show the treatment was conservative and that her medication made her mood more stabilized (AR 48), and is consistent with the record showing stable mood and lack of suicidal or homicidal ideations, hallucinations, psychomotor retardation, delusions, or hospital visits for mental health disorders, citing Molina, 674 F.3d at 1111.  However, in Molina, the ALJ's credibility finding in this regard was based on the findings of two examining physicians.  674 F.3d at 1113 ("Moreover, the ALJ supported her conclusion that Molina was not credible on the additional grounds that Molina's allegations were undermined by her demeanor and presentation as described by Dr. Yost, and inconsistent with other medical evidence in the record. The first finding is supported by Dr. Yost's report that Molina was alert and oriented, maintained good eye contact, did not appear excessively anxious, spoke coherently and fluently, smiled appropriately, and was congenial.  The second is supported by the conclusions of both Dr. Yost and the state examining physician that Molina's anxiety disorder was not severe and that she was able to control it with Lorazepam and other self-calming measures.").  Here, there is no examining physician findings used to support the determination of a conservative course of treatment, and as Plaintiff's primary challenge in this appeal highlights, the ALJ found the state psychological assessments to be not persuasive because the assessments predated certain symptom testimony and were not consistent with the overall longitudinal record, and based the mental RFC determination in the absence of a physician opinion that the ALJ gave weight to. (AR 22.)

The Court acknowledges some courts uphold a conservative treatment finding in relation to mental health treatments, and similar medications.  See Thomas v. v. Saul, No. CV 18-09746-DFM, 2020 WL 586819, at *4 (C.D. Cal. Feb. 5, 2020) ("Plaintiff had prescriptions for Xanax and Celexa for his mental impairments . . . also took metoprolol (hypertension), omeprazole

---

Courts have recognized that the prescription of many of these medications does not constitute "conservative treatment." . . . Plaintiff did not need to undergo any other type of care in order to show a more aggressive treatment of his psychiatric condition.").

1  (GERD), ProAir (asthma), QVAR (asthma), NTG (heart), aspirin, Flonase (asthma), Benadryl

2  (sleep), and Motrin or Tylenol (pain) . . . record also reflects that Plaintiff was either allergic or

3  poorly responded to a range of other medications, including SSRIs and statins . . . During his

4  hospitalization, Plaintiff recovered quickly when provided with NTG . . . The plan for treatment

5  of his condition was simply for Plaintiff to resume taking his medication, which he used up but

6  not yet refilled . . . Throughout his alleged disability period, when Plaintiff was on his

7  medication, his conditions were well controlled.  Further, sometimes Plaintiff would go without

8  usage of his psychiatric medication and still report only mild depression and anxiety.  The record

9  reflects a conservative, stable course of treatment.").  The Court does not mean to hold that

10  treatment with certain medications can never be considered conservative for a credibility

11  analysis.

12       However, again, here the ALJ did not sufficiently support the finding with specific

13  reasons nor tied the finding to specific testimony, nor even mentioned the specific medications.

14  Therefore, even if the medications Plaintiff was prescribed here could be considered routine and

15  conservative for the mental health conditions, the Court finds the ALJ's analysis to be

16  insufficiently specific to qualify as a clear and convincing supported by substantial evidence in

17  the record.  See Brown-Hunter, 806 F.3d at 493; Rice v. Colvin, No. 2:15-CV-1763 DB, 2017

18  WL 85815, at *5 (E.D. Cal. Jan. 10, 2017) ("[T]he ALJ failed to explain or support the assertion

19  that plaintiff's treatment has been conservative . . . The record reflects that plaintiff's treatment

20  has included medications such as Fluoxetine (Prozac), Citalopram (Celexa), Alprazolam

21  (Xanax), Prazosin (Minipress), Risperidone (Risperdal), and Venlafaxine (Effexor) . . . It is

22  entirely unclear to the court how treatment with such medications could be characterized as

23  conservative."); Wheeler v. Berryhill, No. 3:16-CV-01623-AA, 2017 WL 3478483, at *4 (D. Or.

24  Aug. 11, 2017) ("The ALJ characterized plaintiff's course of treatment as routine

25  and conservative . . . [and] clearly identified which treatments he considered conservative, noting

26  that plaintiff has never been psychiatrically hospitalized or placed in out-or in-patient treatment,

27  takes only "routine" front-line SSRI medication, was treated by a primary care physician and not

28  a psychiatrist, has engaged in supportive and solution-focused therapy, and stopped attending

1   psychological treatment for several months . . . But it is not possible to evaluate whether those

2   treatments conflict with plaintiff's allegations about the severity of his symptoms because the

3   ALJ never specified *which* symptom statements conflict with plaintiff's course of treatment.");

4   Maria B. v. Saul, No. EDCV 20-192-KK, 2020 WL 11884826, at *7 (C.D. Cal. Oct. 30, 2020)

5   ("As an initial matter, the ALJ failed to specify which of Plaintiff's treatments was 'routine

6   and/or conservative' . . . Second, to the extent the ALJ claims Plaintiff received 'routine

7   and/or conservative' mental health treatment,       the       record       does       not       suggest

8   Plaintiff's treatment was routine or conservative . . . the ALJ failed to provide any evidence or

9   discussion        in        support        of        her        characterization        of

10  Plaintiff's mental health treatment as conservative."); Emme J. C. v. Saul, No. EDCV 19-02186

11  PVC, 2021 WL 3730165, at *5 (C.D. Cal. Mar. 23, 2021) ("Courts have recognized that some of

12  Plaintiff's treatment modalities do not constitute 'routine' or 'conservative' treatment . . . The

13  ALJ's       failure       to       explain       how       Plaintiff's mental health treatment was       routine

14  and conservative prevents the Court from concluding that the ALJ did not arbitrarily discredit

15  Plaintiff's testimony on this ground.").

16        Accordingly, the Court finds the ALJ's rejection of Plaintiff's symptom testimony

17  because of an alleged conservative and routine course of treatment, was not a clear and

18  convincing reason supported by substantial evidence in the record.  The Court now turns to

19  consideration of the ALJ's use of daily activities in the credibility determination.

20        **b.    Daily Activities**

21        The ALJ may consider the claimant's daily activities in making a credibility

22  determination.  See Diedrich v. Berryhill, 874 F.3d 634, 642-43 (9th Cir. 2017); Thomas, 278

23  F.3d at 958-59; 20 C.F.R. § 404.1529(c)(3)(i) ("Because symptoms sometimes suggest a greater

24  severity of impairment than can be shown by objective medical evidence alone, we will carefully

25  consider any other information you may submit about your symptoms . . . Factors relevant to

26  your symptoms, such as pain, which we will consider include: (i) Your daily activities.").

27  However, "[o]ne does not need to be 'utterly incapacitated' in order to be disabled." Vertigan v.

28  Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.

1   1989)).  In fact, "many home activities are not easily transferable to what may be the more

2   grueling environment of the workplace."  Fair, 885 F.2d at 603.  Only if a claimant's level of

3   activities is inconsistent with her claimed limitations would activities of daily living have any

4   bearing on the claimant's credibility.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

5       There are two ways an ALJ may use daily activities for an adverse credibility finding.

6   Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).  First, daily activities can form the basis of an

7   adverse credibility determination if the claimant's activity contradicts the claimant's testimony.

8   Id.  Second, "daily activities may be grounds for an adverse credibility finding 'if a claimant is

9   able to spend a substantial part of his day engaged in pursuits involving the performance of

10  physical functions that are transferable to a work setting.' "  Id. (quoting Fair v. Bowen, 885 F.2d

11  597, 603 (9th Cir. 1989)).  The ALJ must make specific findings as to the daily activities and

12  their transferability to conclude that the claimant's daily activities warrant an adverse credibility

13  determination.  Orn, 495 F.3d at 639.

14      In the credibility analysis of the RFC portion of the opinion, the ALJ only states: "the

15  claimant's admitted activities of daily living suggest a greater degree of functional capacity than

16  claimed.  (3E; 4E)."  (AR 21.)  The ALJ does not specifically cite any of the specific daily

17  activities nor what specific testimony is undermined by the daily activities, only citing to the

18  entirety of the Plaintiff's report as submitted.

19      Defendant notes the ALJ incorporated the "paragraph B" mental function analysis into

20  the RFC analysis, and that the ALJ "discussed Plaintiff's daily activities as reported on her

21  disability forms."  (Opp'n 11.)  Above, the Court summarized these findings and observations in

22  their entirety.  The Court finds the ALJ's statements at step three do not save the ALJ's failure to

23  properly use Plaintiff's daily activities in the credibility analysis, and the Court does not find the

24  ALJ's reliance on daily activities to be a clear and convincing reason supported by substantial

25  evidence in the record for discounting Plaintiff's testimony.  More specifically, at step three, the

26  ALJ largely cites to the ability to essentially complete activities such as communicating and

27  presenting at medical appointments as part of the listing analysis of the paragraph B criteria, and

28  the only mention of a specific activity that can be considered a "daily activity" outside the realm

of a basic ability to groom or complete self-care is that she can perform simple maintenance[6], and spends time with family and friends.  (AR 19.)

While Defendant emphasizes the discussion was incorporated into the rest of the opinion, the ALJ's citations at step three are essentially findings relating to the listing determination concerning rudimentary abilities to even obtain medical care and present oneself at a doctor to receive help – these are not specific activities of daily living as typically used in a credibility analysis that reviews "activities of daily living" in relation to specific testimony.  As the ALJ's opinion itself indicates, the "limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process," and "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning," (AR 20).  See Hyneman v. Colvin, No. C13-0669-JLR, 2013 WL 5913235, at *3 (W.D. Wash. Nov. 4, 2013) ("The Commissioner argues that the ALJ also cited inconsistent daily activities as a reason to discount Plaintiff's credibility . . . . The Commissioner does not identify where in the decision the ALJ so noted, and the Court's review of the decision does not comport . . . the portion of the decision cited as support does not actually contain a description of Plaintiff's activities nor an explanation of how those activities contradict his allegations . . . [t]he ALJ did describe the 'mild restriction' in Plaintiff's daily activities in his step-three findings, but did not suggest there that Plaintiff's self-reported daily activities undermined his credibility . . . passing reference to daily activities that are 'contrary to a finding of total disability' . . . without any indication of which activities he had in mind nor which allegations are undermined by those activities, is not sufficiently specific as to be considered clear and convincing."); Gardner v. Colvin, No. EDCV 13-1272 JC, 2014 WL 255621, at *4 (C.D. Cal. Jan. 23, 2014) (stating the court was " not persuaded that the foregoing finding by the ALJ satisfied the ALJ's obligation to specify the basis for rejecting plaintiff's credibility in this case [as] [t]he ALJ identified the foregoing mild limitation in plaintiff's mental

---

[6]  The Court examined Exhibits 3E and 4E (AR273-288), which are duplicative, and the Court could not find any reference to simple maintenance.

abilities when considering the 'paragraph B Criteria' used to determine the severity of plaintiff's mental impairments at step two . . . not when evaluating plaintiff's credibility in connection with the ALJ's residual functional capacity assessment at step four."); Adeena W. v. Saul, No. 6:19-CV-00051-SB, 2020 WL 2992191, at *4 (D. Or. June 4, 2020).

While the Court has significant doubts about the extent of Plaintiff's disabling symptom testimony, based on the Court's review of the ALJ's opinion, the record as a whole as relied on by the ALJ, and the parties' arguments, the Court does not find the ALJ's blanket reference to activities of daily living at step four, and limited discussion at step three, to be sufficiently connected to specific aspects of the Plaintiff's symptom testimony, to satisfy the clear and convincing standard.  The ALJ never actually linked the medical evidence by identifying which daily activities conflicted with which part of the testimony.  Burrell, 775 F.3d at 1138 (9th Cir. 2014) ("[T]he ALJ did not elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony.") (emphasis in original); Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020) ("This requires the ALJ to specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines that testimony.") (internal quotation marks and citation omitted); Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017) ("[T]he ALJ must give specific, clear, and convincing reasons for rejecting the testimony by identifying *which* testimony [the ALJ] found not credible and explaining *which* evidence contradicted that testimony . . . This boilerplate language does neither.") (internal quotation marks and citations omitted) (emphasis and alterations in original).  The ALJ's use of activities of daily living in the credibility analysis did not satisfy either of the permissible grounds for doing so.  Orn, 495 F.3d at 639 ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities ... does not in any way detract from her credibility as to her overall disability . . . . Neither of the two grounds for using daily activities to form the basis of an adverse credibility determination are present . . .  activities do not contradict his other testimony . . . [and] activities do not meet the threshold for transferable work skills.") (quoting Vertigan, 260 F.3d at 1050) (citing Fair, 885 F.2d at 603) (internal quotation marks omitted).

Accordingly, the Court finds the ALJ's use of activities of daily living was not a clear

1   and convincing reason for discounting the Plaintiff's symptom and limitation testimony.

2   Because Defendant's first proffered reason of being inconsistent with the objective medical

3   evidence cannot stand alone, the Court concludes the ALJ did not provide clear and convincing

4   reasons for discounting Plaintiff's testimony, and declines to analyze the ALJ's finding that the

5   testimony was inconsistent with the objective medical evidence.  See Rollins, 261 F.3d at 857;

6   Vertigan, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully corroborated by the

7   objective medical findings, in and of itself, is not a clear and convincing reason for rejecting

8   it."); Burch, 400 F.3d at 680-81 ("Although lack of medical evidence cannot form the sole basis

9   for discounting pain testimony, it is a factor that the ALJ can consider in his credibility

10  analysis.").

11        **B.      The Court finds Remand is Appropriate**

12        The ordinary remand rule provides that when "the record before the agency does not

13  support the agency action, . . . the agency has not considered all relevant factors, or . . . the

14  reviewing court simply cannot evaluate the challenged agency action on the basis of the record

15  before it, the proper course, except in rare circumstances, is to remand to the agency for

16  additional investigation or explanation."  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d

17  1090, 1099 (9th Cir. 2014).  This applies equally in Social Security cases.  Treichler, 775 F.3d at

18  1099.  Under the Social Security Act "courts are empowered to affirm, modify, or reverse a

19  decision by the Commissioner 'with or without remanding the cause for a rehearing.' "

20  Garrison, 759 F.3d at 1019 (quoting 42 U.S.C. § 405(g)).  The decision to remand for benefits is

21  discretionary.  Treichler, 775 F.3d at 1100.  In Social Security cases, courts generally remand

22  with instructions to calculate and award benefits when it is clear from the record that the

23  claimant is entitled to benefits.  Garrison, 759 F.3d at 1019.  Even when the circumstances are

24  present to remand for benefits, "[t]he decision whether to remand a case for additional evidence

25  or simply to award benefits is in our discretion."  Treichler, 775 F.3d at 1102 (quoting Swenson

26  v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989)).

27        The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which

28  must be satisfied in order for a court to remand to an ALJ with instructions to calculate and

1  award benefits: (1) the record has been fully developed and further administrative proceedings

2  would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for

3  rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly

4  discredited evidence were credited as true, the ALJ would be required to find the claimant

5  disabled on remand."  Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).  The credit as true

6  doctrine allows "flexibility" which "is properly understood as requiring courts to remand for

7  further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an

8  evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled.

9  Garrison, 759 F.3d at 1021.

10      The Court has determined the ALJ failed to provide clear and convincing reasons for the

11  discounted weight accorded to Plaintiff's symptom and limitation testimony.  The Court need not

12  address Plaintiff's remaining challenge to the ALJ's mental residual functional capacity

13  determination.  Plaintiff seeks the remedy of remand.  (Br. 17.)  The Court finds that based on

14  the ALJ's opinion and review of the record, doubts remain as to whether Plaintiff is in fact

15  disabled.   The Court orders this action remanded for further administrative proceedings

16  consistent with this opinion, and to further develop the record as deemed necessary.

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1

**V.**

2

**CONCLUSION AND ORDER**

3      Based on all of the foregoing reasons, the Court finds that the ALJ did not provide clear

4 and convincing reasons for discounting Plaintiff's symptom testimony.  See Moore v. Comm'r

5 of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002) ("The clear and convincing standard is

6 the most demanding required in Social Security cases.").  The Court need not address Plaintiff's

7 remaining challenge to the ALJ's mental residual functional capacity determination, however,

8 the Court instructs the ALJ to evaluate whether a consultative exam is necessary, and whether

9 there is any need to further develop the record.

10      Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the

11 Commissioner of Social Security is GRANTED and this matter is remanded back to the

12 Commissioner of Social Security for further proceedings consistent with this order.  It is

13 FURTHER ORDERED that judgment be entered in favor of Plaintiff Tracilyn Marie Garcia and

14 against Defendant Commissioner of Social Security.  The Clerk of the Court is directed to

15 CLOSE this action.

16

17 IT IS SO ORDERED.

18 Dated:   **June 9, 2022**      _____

19                                                UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28